UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TONIO HUDSON,                          )      Case No. 1:11CV2733
                                       )
                Petitioner,            )      JUDGE DAN AARON POLSTER
                                       )
        v.                             )      Magistrate Judge George J. Limbert
                                       )
TERRY TIBBALS, Warden,                 )
                                       )
                Respondent.            )      **Report and Recommendation**
                                       )      **of Magistrate Judge**


On December 9, 2011[1], Petitioner Tonio Hudson ("Petitioner"), acting *pro se*, filed a petition

for a writ of  habeas corpus pursuant to 28 U.S.C. §2254.  ECF Dkt. #1.  Petitioner seeks relief for

alleged constitutional violations that occurred during his trial in the Cuyahoga County, Ohio Court

of Common Pleas, where he was convicted of one count of murder  in violation of Ohio Revised

Code ("ORC") §2903.02, one count of aggravated murder in violation of Ohio Revised Code

("ORC") §2903.01(B), one count of aggravated robbery in violation of ORC  §2911.01(A)(1), and

one count of aggravated robbery in violation of ORC  §2911.01(A)(3), each count with a firearms

specification pursuant to ORC §2941.145.  ECF Dkt. #5-1 at 48.  On May 29, 2012, Respondent

Terry Tibbals ("Respondent"), Warden of Mansfield Correctional Institute, where Petitioner is

incarcerated, filed an answer/return of writ. ECF Dkt. #5. On June 18, 2012, Petitioner, filed a

traverse. ECF Dkt. #7.  For the following reasons, the undersigned RECOMMENDS that the Court

DISMISS the petition in its entirety with prejudice:

---

[1]The filing date for a petition from an incarcerated *pro se* petitioner is the date the petition was
handed over to the prison mail system, not the date it was received and docketed by the federal habeas court.
*Houston v. Lack*, 487 U.S. 266, 270-72, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

I.      **SYNOPSIS OF THE FACTS**

The Eighth District Court of Appeals of Ohio set forth the relevant facts on direct appeal. ECF Dkt. #5-1 at 124-147.  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999):

> {¶ 2} On May 28, 2007, the victim, Marcell Bell, was shot while sitting in the driver's seat of his car in the parking lot of the Hunter Hills apartment complex in Euclid, Ohio.  He died later that night at the hospital as a result of gunshot wounds to his face, neck, and wrist.
>
> {¶ 3} The victim's friend, Martin Powers, Jr., was sitting in the car next to the victim at the time of the shooting.  According to Powers, Bell was looking for his car keys when Hudson approached the car, pointed a gun at Bell, and demanded money.  Bell refused to give appellant money.  Hudson demanded money from Bell a second time.  When Bell refused for the second time, Hudson shot out the rear passenger window on the driver's side.  After Bell refused appellant's third demand for money, Hudson fired two more shots into the car.  Powers jumped out of the car and ran.  Bell also ran from the car. Powers and Bell ran down a hill toward Euclid Avenue and appellant ran up the hill toward Glenridge Avenue.  When Bell stumbled and fell, Powers saw that Bell had been shot in the face.  Powers said he did not know Bell had been shot until he saw Bell holding his face.  Powers ran up to his house and told someone to call 911.  His father came out and the two ran to the victim and tried to help him.  Powers told the responding officer that "Montana" shot Bell. He testified that he had met appellant, who he knew as "Montana," for the first time earlier that evening.  Powers said his brother, Frederick Andrews, introduced them.
>
> {¶ 4} Andrews testified that he lived in a house next door to the Hunter Hills apartment complex with his mother, stepfather, and brothers.  He met the appellant two months before the shooting and knew him as "Montana."  The appellant told Andrews that he lived up the hill on Grand Avenue.
>
> {¶ 5} According to Andrews, on the day of the shooting he went to a picnic with his brother, Powers, and Bell.  They returned home and were sitting in Bell's car in the parking lot of the apartment complex.  Hudson approached him looking to buy some marijuana.  After Hudson decided not to buy from Andrews, Bell offered to sell him some.  Hudson decided not to buy from Bell either and walked away.  Andrews got out of the car and went to his house to change clothes.
>
> {¶ 6} Once inside the house, Andrews heard two or three gunshots. Andrews ran down the stairs, looked out the window and saw Bell and his brother, Powers, running.  He ran out the back door and saw Bell fall on the driveway with blood coming from his face.  Andrews testified that when he was leaving the parking lot, just before the shooting, the only individuals in the lot were Powers, Bell, Hudson, and himself.

{¶ 7} Other witnesses, Shana Thompson and Ezell Oliver, residents of the apartment complex who knew the victim and were familiar with appellant, testified they saw Hudson approach Bell's car just prior to hearing gunshots. The police obtained physical evidence from a search of appellant's mother's home on Glenridge Avenue, that included an empty box of 9 millimeter Luger ammunition that matched the type of shell casings found at the scene, photographs, a cell phone with phone calls made to Florida immediately after the shooting, and an address book with appellant's name and birthday written inside.

{¶ 8} Hudson was arrested on October 23, 2007 in a Florida hotel room by a United States marshall [sic], who was a member of the Northern Ohio Violent Fugitive Task Force, and who had tracked Hudson to that location.

*State v. Hudson*, 2009 WL 4694916 at *1-2; ECF Dkt.#5-1 at 126-128.

## II. **PROCEDURAL HISTORY**

### A. **State Trial Court**

On September 27, 2007, the Cuyahoga County, Ohio Grand Jury indicted Petitioner for:

one count of aggravated murder in violation of ORC §2903.01(A), with a felony murder specification, and a firearm specifications pursuant to ORC §2945.145;

one count of aggravated murder in violation of ORC §2903.01(B), with a firearm specifications pursuant to ORC §2945.145;

one count of aggravated robbery in violation of ORC §2911.01(A)(1), with a firearm specification pursuant to ORC §2945.145; and

one count of aggravated robbery in violation of ORC §2911.01(A)(3), with a firearm specification pursuant to ORC §2945.145.

*Id.* at 5-9.  Petitioner entered a not guilty plea at arraignment.  *Id.* at 10.

Petitioner filed a motion to suppress evidence recovered in a search of his home as well as a motion to suppress identification evidence.  *Id.* at 11-33. Both motions were summarily denied. *Id.* at 40.

On May 14, 2008, the Cuyahoga County, Ohio Grand Jury re-indicted Petitioner for:

one count of aggravated murder in violation of ORC §2903.01(A), with a felony murder specification, and a firearm specifications pursuant to ORC §2945.145 (Count One);

one count of aggravated murder in violation of ORC §2903.01(B), with a firearm specifications pursuant to ORC §2945.145 (Count Two);

one count of aggravated robbery in violation of ORC §2911.01(A)(1), with a firearm specification pursuant to ORC §2945.145 (Count Three); and

one count of aggravated robbery in violation of ORC §2911.01(A)(3), with a firearm specification pursuant to ORC §2945.145 (Count Four).

*Id.* at 5-9. Petitioner entered a not guilty plea at arraignment. *Id.* at 47. The original indictment was dismissed based upon the filing of the second indictment. *Id.* at 41.

Prior to trial, the prosecutor removed the felony murder specification in Count One. The case proceeded to trial, where Petitioner was found guilty of one count of murder in violation of ORC §2903.02 (the lesser included offense in Count One), one count of aggravated murder in violation of ORC §2903.01(B), one count of aggravated robbery in violation of ORC §2911.01(A)(1), and one count of aggravated robbery in violation of ORC §2911.01(A)(3), each count with a firearms specification pursuant to ORC §2941.145. *Id.* at 48.

At sentencing hearing on June 30, 2008, the trial court imposed a sentence of fifteen years to life on Count One, twenty-five years to life on Count Two, and ten years on Count Three and ten years on Count Four, with the sentences on Counts One and Three to run consecutively, but concurrent with the sentences in Counts Two and Four. The firearms specifications were merged and the trial court imposed a three-year sentence on the sole merged firearm specification. Therefore, Petitioner was sentenced to an aggregate term of imprisonment of twenty-eight years to life. *Id.* at 49.

### B.    Motion for a New Trial

Petitioner, through counsel, filed a Motion for New Trial on July 1, 2008. *Id.* at 269-270. On July 25, 2008, the trial court summarily denied Petitioner's motion for new trial. *Id.* at 277.

### C.    Direct Appeal

On July 16, 2008, Petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals for the Eighth District. *Id.* at 51. Petitioner raised the following assignments of error in his appellate brief:

ASSIGNMENT OF ERROR NUMBER 1:

THE TRIAL COURT DENIED HUDSON HIS RIGHT TO A FAIR JURY TRIAL UNDER THE OHIO CONSTITUTION AND UNITED STATES CONSTITUTION BY REFUSING TO ALLOW A FULL EXAMINATION OF US MARSHALL [SIC] PLACE DUE TO ALLEGED PROTECTIONS WITHIN THE CLASSIFIED INFORMATION PROCEDURES ACT.

ASSIGNMENT OF ERROR NUMBER 2:

TONIO HUDSON'S RIGHT TO A FAIR TRIAL WAS VIOLATED
WHEN US MARSHALL [SIC] JASON PLACE INFORMED THE JURY
THAT HUDSON HAD A PRIOR CRIMINAL RECORD.

ASSIGNMENT OF ERROR NUMBER 3:

THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED DUE
TO A FAILURE OF THE STATE TO CARRY THE MANIFEST
WEIGHT OF THE EVIDENCE BURDEN.

ASSIGNMENT OF ERROR NUMBER 4:

TONIO HUDSON'S CONVICTION SHOULD BE REVERSED DUE TO
INSUFFICIENCY OF EVIDENCE.

ASSIGNMENT OF ERROR NUMBER 5:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT
GAVE A FLIGHT INSTRUCTION, OVER DEFENSE OBJECTION.

ASSIGNMENT OF ERROR NUMBER 6:

THE TRIAL COURT ERRED IN OVERRULING SOME OR ALL OF
THE MOTIONS TO SUPPRESS REGARDING PHOTO
IDENTIFICATION.

ASSIGNMENT OF ERROR NUMBER 7:

THE COURT FAILED TO PROPERLY ADVISE THE DEFENDANT OF
BOTH POST-RELEASE CONTROL AND PAROLE AS PART OF HIS
SENTENCING.

*Id.* at 55.

On December 10, 2009, the Eighth District Court of Appeals affirmed the trial court's judgment of conviction, but reversed the sentence and remanded the case for resentencing, because Petitioner was convicted and sentenced on two counts of murder for a single killing, in violation of R.C. 2941.25 and the double jeopardy clauses of both the Ohio and United States Constitutions. *Id.* at 124-147.

### D.    Motion to Void Judgment

On October 17, 2008, during the pendency of his direct appeal before the Eighth District, Petitioner filed a *pro se* motion to void judgment. *Id.* at 278-285.   On October 22, 2008, the trial court summarily denied Petitioner's motion to void judgment. *Id.* at 286.

### E.    Supreme Court of Ohio

On February 3, 2010, Petitioner, with new counsel, filed a notice of appeal to the Supreme Court of Ohio. *Id.* at 148-149.  In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

A CRIMINAL DEFENDANT IS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT WITNESSES AGAINST HIM WHEN A TRIAL COURT APPLIES FEDERAL REGULATIONS TO LIMIT CROSS EXAMINATION OF A UNITED STATES MARSHAL.

WHEN CONFRONTATION AND CROSS EXAMINATION OF THE ARRESTING OFFICER IS LIMITED BY APPLICATION OF FEDERAL LAW, A DEFENDANT'S OBJECTION TO A "FLIGHT" JURY INSTRUCTION MUST BE SUSTAINED.

UPON MOTION OF THE DEFENDANT, A TRIAL COURT MUST DECLARE A MISTRIAL AFTER A GOVERNMENT WITNESS DISCLOSES TO THE JURY THAT APPELLANT HAD A CRIMINAL RECORD.

THE DUE PROCESS CLAUSES OF THE OHIO AND UNITED STATES CONSTITUTIONS REQUIRE A TRIAL COURT TO SUPPRESS PRETRIAL IDENTIFICATION OF A SUSPECT MADE PURSUANT TO AN UNDULY SUGGESTIVE PHOTO ARRAY.

*Id.* at 152. On May 5, 2010, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question.  *Id.* at 188.

### F.    Motion for Leave to file Application for Reopening of Appeal

On May 21, 2010, Petitioner, acting *pro se*, filed a request for leave to file a delayed reopening of appeal application pursuant to App.R.26(B).  *Id.* at 189.  On June 21, 2010, the Eighth District Court of Appeals denied Petitioner's motion or leave to file his application because he failed to demonstrate good cause to excuse his untimely submission.  *Id.* at 203-208.  No appeal was taken from the Eighth District's order denying Petitioner's motion for leave to file his application.

### G.    Resentencing

On July 22, 2010, the trial court merged Counts One and Two, pursuant to the mandate  of the Eighth District Court of Appeals, and then merged all of the remaining counts.  The state elected to go forward with sentencing on Count Two, and the trial court imposed a sentence of twenty-five years to life on the Count Two, plus a consecutive three-year sentence for the firearm specification

related to Count Two.  Therefore, Petitioner was sentenced to an aggregate term of imprisonment of twenty-eight years to life.  *Id.* at 210.

On August 20, 2010, Petitioner, through counsel, filed a timely notice of appeal.  *Id.* at 211. In his appellate brief, he alleged a single assignment of error:

> APPELLANT'S SENTENCE IS CONTRARY TO LAW AND VIOLATES DUE PROCESS BECAUSE THE TRIAL COURT FAILED TO CONSIDER WHETHER THE SENTENCE WAS CONSISTENT WITH THE SENTENCES IMPOSED FOR SIMILAR CRIMES COMMITTED BY SIMILAR OFFENDERS AND BECAUSE A TWENTY-EIGHT YEARS TO LIFE SENTENCE FOR A FIRST TIME OFFENDER IS INCONSISTENT WITH SUCH SENTENCES.

*Id.* at 215.  Petitioner file a pro se brief, which added eight assignments of error:

> 1. PROSECUTORIAL MISCONDUCT/MISCONDUCT OF A STATE'S WITNESS A FEDERAL EMPLOYEE.
>
> 2. INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> 3. TRIAL JUDGE SHOULD HAVE GRANTED OBJECTION TO FLIGHT INSTRUCTION AFTER DEFENSE WAS PREVENTED FROM FULLY CROSS EXAMINING WITNESS WHOSE TESTIMONY WAS USED TO ESTABLISH FLIGHT. THIS DENIED DEFENDANT RIGHT TO A FAIR TRIAL UNDER OHIO AND UNITED STATES CONSTITUTION.
>
> 4. TRIAL JUDGE ABUSED IT'S [SIC] DISCRETION BY DENYING DEFENDANT'S MOTION FOR A MISTRIAL AND OVERRULING OBJECTION.
>
> 5. INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> 6. TRIAL JUDGE SHOULD HAVE GRANTED MOTION FOR MISTRIAL AFTER FEDERAL WITNESS GAVE TESTIMONY STATING THAT DEFENDANT HAD A CRIMINAL HISTORY.
>
> 7. TRIAL COURT ERRORED [SIC] IN OVERRULING MOTION TO SUPPRESS IDENTIFICATION.
>
> 8. TRIAL COURT ERRORED [SIC] IN OVERRULING MOTION TO SUPPRESS EVIDENCE.

During the pendency of this appeal, Petitioner filed a *pro se* motion to dismiss for lack of a final appealable order.  *Id.* at 252.  In an entry dated June 8, 2011, the Eighth District Court of Appeals remanded the case in order to allow the trial court to correct the sentencing entry, but provided a deadline for the entry of a new sentencing entry, in order to allow the proceedings in the appellate court to continue without interruption.  *Id.* at 257.  The corrected sentencing entry was entered on June 15, 2011, which imposed for a third time an aggregate sentence of twenty-eight

years to life.  *Id.* at 258-259.  On August 4, 2011, the Eighth District Court of Appeals affirmed Petitioner's sentence.  *Id.* at 260-268.  No appeal to the Ohio Supreme Court was taken.

III.  28 U.S.C. § 2254 PETITION

On December 9, 2011, Petitioner, acting *pro se*, filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

> GROUND ONE: WHETHER PETITIONER WAS DENIED THE RIGHT TO A FAIR TRIAL AND THE RIGHT TO CONFRONT AND CROSS EXAMINE WITNESSES AGAINST HIM.
>
> GROUND TWO: WHETHER THE PETITIONER WAS DENIED THE RIGHT TO A FAIR TRIAL WHEN THE TRIAL JUDGE GAVE FLIGHT INSTRUCTION.
>
> GROUND THREE: WHEN A GOVERNMENT WITNESS STATES THAT THE PETITIONER HAD A PRIOR CRIMINAL HISTORY WAS PETITIONER DENIED THE RIGHT TO A FAIR TRIAL.
>
> GROUND FOUR: WHETHER THE TRIAL JUDGE SHOULD HAVE SUPPRESSED THE PRE TRIAL IDENTIFICATIONS OF PETITIONER MADE BY WITNESSES.

**IV.**     **PROCEDURAL BARRIERS TO REVIEW**

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).  However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

**A.**     **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the

-8-

date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

**B.  Exhaustion of State Remedies**

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted).  In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to

-9-

dismiss the unexhausted claims and proceed with the exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32  (6th Cir. 2009).  The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.   **Procedural Default**

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds." *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

> (1)   whether the petitioner failed to comply with an applicable state procedural rule;

-10-

(2)     whether the state courts actually enforced the state procedural sanction;

(3)     whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)     if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve  to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and

-11-

actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

> Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004). The above standards apply to the Court's review of Petitioner's claims.

## V.     STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 on December 9, 2011, well after the act's effective date of April 26, 1996. *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998). Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus. The AEDPA provides:

> (d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1)     resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-12-

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

    A.    Decisions of lower federal courts may not be considered.

    B.    Only the holdings of the Supreme Court, rather than its dicta, may be considered.

    C.    The state court decision may be overturned only if:

        1.    It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

        2.    the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

        3.    'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

        4.    the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

> D.     Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

> E.     Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).   The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).   The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court recently observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct.

-14-

2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.   ANALYSIS

### A.   Ground One

WHETHER PETITIONER WAS DENIED THE RIGHT TO A FAIR TRIAL AND THE RIGHT TO CONFRONT AND CROSS EXAMINE WITNESSES AGAINST HIM.

In Ground One, Petitioner contends that his Sixth Amendment right to a fair trial was violated when he was not permitted to cross-examine United States Marshal Jason Place ("USM Place"), about the identity of the woman that Petitioner was with in Florida or her relationship with law enforcement.  The Eighth District provided the following analysis of Petitioner's Sixth Amendment claim on direct appeal:

{¶ 9} In the first assignment of error, Hudson argues that he was denied his constitutional right to confront and cross-examine a prosecution witness when the trial court limited his questioning of the United States marshall [sic] about the woman who accompanied Hudson to the hotel room in Florida immediately prior to his arrest. Appellant additionally challenges the trial court's finding that the information sought was not relevant.

{¶ 10} "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case.  Such exercise of discretion will not be disturbed in the absence of a clear showing of an abuse of discretion." *State v. Trimble*, 122 Ohio St.3d 297, 911 N.E.2d 242, 2009-Ohio-2961, at ¶ 266, citing *State v. Acre* (1983), 6 Ohio St.3d 140, 145, 451 N.E.2d 802. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983) 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶ 11} The record reflects that after the state elicited testimony from the marshall [sic] as to the details of Hudson's arrest in Florida, defense counsel attempted to question the marshall [sic] as follows:

{¶ 12} "Counsel: This female who was at this apartment, or motel, what's her name?

{¶ 13} "Marshall [sic]: I don't know her name.

{¶ 14} "Counsel: You didn't come to take her name down after you made the arrest?

{¶ 15} "Marshall [sic]: No.

-15-

{¶ 16} "Counsel: "You let her go?

{¶ 17} "Marshall [sic]: We did.

{¶ 18} "Counsel: She just went home?

{¶ 19} "Marshall [sic]: I don't know what she did.

{¶ 20} " * * *

{¶ 21} "Counsel: Who's [sic] name was the room in.

{¶ 22} "Marshall [sic]: I don't even know. We didn't even check that.

{¶ 23} "Counsel: This girl, did you use her to help get Tonio to this motel room?

{¶ 24} "Marshall [sic]: I have been instructed by the U.S. Attorney General's Office and the United State's [sic] Office of Counsel not to answer questions like that."

{¶ 25} Defense counsel objected and argued that the line of questioning was necessary to rebut the state's attempt to pursue a flight instruction.  A United States attorney explained to the court that the witness was not authorized to answer certain questions posed by the defendant.  The trial court continued the questioning to the following day to allow the state to submit a motion in limine.  After reviewing the motion along with a memo from the Department of Justice Office of General Counsel outlining the nonprivileged areas the witness was authorized to testify about, and after a United States attorney stated for the record that the information sought by the defense was classified, the court granted the motion and limited the cross-examination of the marshall [sic].  The court also stated that the evidence defense counsel sought to elicit from the witness was not relevant.

{¶ 26} At issue in this case is the applicability of the regulations found at Title 28 of the Code of Federal Regulations, Sections 16.21 et seq., relating to disclosure of information by employees of the Department of Justice. We note first that agencies of the United States government may draft procedural rules and regulations that govern requests for information and the agency's determination of whether it will release the information. See *United States ex rel. Touhy v. Ragen* (1951), 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417. The regulations at issue in this case have been upheld as valid. *United States v. Allen* (C.A.10, 1977), 554 F.2d 398.

{¶ 27} 28 C.F.R. § 16.22 provides in pertinent part:

{¶ 28} "(a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

{¶ 29} " * * *

-16-

{¶ 30} "(c) If oral testimony is sought by a demand in any case or matter in which the United States is not a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by his attorney, setting forth a summary of the testimony sought and its relevance to the proceeding, must be furnished to the responsible U.S. Attorney. Any authorization for testimony by a present or former employee of the Department shall be limited to the scope of the demand as summarized in such statement."

{¶ 31} Subsequent sections of this chapter set forth the procedure to be followed after a matter is referred to a United States attorney pursuant to section 16.22 and the procedure for an administrative appeal should the requested approval be denied.

{¶ 32} In cases such as this, this court has found that the constitutional issue of whether these regulations deny defendants a Sixth Amendment right to call and cross-examine witnesses is not reached until the defendants follow the procedures and then have their demands denied. *State v. O'Neal* (July 25, 1985), Cuyahoga App. No. 44551, citing *United States v. Marino* (C.A.6, 1981), 658 F.2d 1120; *State v. Cisternino* (July 10, 1980), Cuyahoga App. Nos. 39894 and 39916, citing *United States v. Allen*, 554 F.2d at 406. The record in the instant case demonstrates that appellant did not comply with the requirement to submit an affidavit or statement summarizing the testimony desired and its relevancy so that the Department of Justice could consider the request and determine whether to grant permission for the testimony. Accordingly, we do not reach the constitutional claim.

*Hudson*, *supra*, at *3-4.

Petitioner contends that the state had an affirmative duty to notify the trial court, in advance of the trial, of the federal case law governing the limitations on the federal agent's testimony. Petitioner's argument is predicated upon a colloquy between the trial court and the prosecutor, in which the trial court admonished the prosecutor for his failure to brief the issue prior to trial. ECF Dkt. #6-8 at 227-234. Petitioner further contends that *Marino* is traditionally invoked to quash a subpoena filed by defense counsel in a criminal case. Because the Department of Justice employee in this case was called as a witness for the state, Petitioner contends that the rote application of *Marino* violates his constitutional right to confront witnesses. In other words, Appellant appears to argue that his Sixth Amendment right to compulsory process was violated because the Court allowed the state to offer only selected portions of USM Place's testimony.

The Supreme Court has held that the Attorney General may lawfully make regulations instructing employees with regard to testifying in litigation. *Touhy*, 340 U.S. at 470, see also 5 U.S.C. § 301. The Attorney General has established such regulations, which are found at 28 C.F.R. §§ 16.21 through 16.29 and are known as the *Touhy* regulations. The regulations set up a procedure

-17-

by which Department of Justice officials make decisions about whether an employee called upon to testify in litigation is permitted to disclose the requested information, which information is summarized in a "demand" by the individual or entity seeking the information. See 28 C.F.R. §§ 16.21, et seq.

Once the demand containing the summary of the testimony sought is submitted, the appropriate persons in the Department of Justice will make a decision about whether the testimony will be disclosed.  See 28 C.F.R. § 16.22 and 16.24.  The Court of Appeals for the Sixth Circuit has recognized that:

> [t]he Department of Justice has a legitimate interest in regulating access to government information contained in its files or obtained by its employees during the scope of their official duties.  Without a procedure governing demands by potential litigants, the efficiency of the Department could be greatly impaired.  The question of whether these procedures deny the defendants their Sixth Amendment right to call and cross-examine witnesses is not reached until the defendants follow the procedures and then have their demands denied.

*Marino*, 658 F.2d 1120, 1125 (6th Cir.1981).

The Eighth District Court of Appeals correctly concluded that Petitioner may not assert a violation of his right to compulsory process unless he has fully complied with the agency's *Touhy* regulations.  See *Marino*, *supra*.  The *Touhy* regulations, by their very nature, contemplate that a Department of Justice employee may provide specifically-circumscribed testimony regarding government information obtained during the scope of his or her official duties.  The regulations permit the agency to limit the information provided at trial regardless of the party that subpoenas the employee to testify. Accordingly, that portion of Petitioner's argument that is predicated upon the limited testimony provided by the USM Place at trial should be rejected.

Simply stated, there is no evidence in the record to demonstrate that Petitioner or his counsel provided an affidavit "setting forth a summary of the testimony sought," as required by 28 C.F.R. §16.22(c).  Therefore, pursuant to *Marino*, the undersigned recommends that Petitioner's Sixth Amendment challenge asserted in Ground One must fail due to his failure to comply with the federal regulations.

-18-

**B.**  **Ground Two**

WHETHER THE PETITIONER WAS DENIED THE RIGHT TO A FAIR TRIAL
WHEN THE TRIAL JUDGE GAVE FLIGHT INSTRUCTION.

In his second ground for relief, Petitioner contends that his Sixth Amendment right to a fair trial was violated when the trial court instructed the jury on flight.  The Supreme Court has emphasized that a habeas petitioner has a heavy burden to establish that an allegedly erroneous jury instruction would invalidate a state court's judgment.  *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).  The fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief.  *Durr v. Mitchell*, 487 F.3d 423, 446 (6th Cir.2007), cert. denied, 552 U.S. 1261, 128 S.Ct. 1652, 170 L.Ed.2d 361 (2008); *Poindexter v. Mitchell*, 454 F.3d 564, 586-587 (6th Cir.2006). Such errors are reviewable in habeas only if they deprived the petitioner of constitutional due process.  *Durr*, 487 F.3d at 446; *Poindexter*, 454 F.3d at 586–587.

In *Henderson*, the Supreme Court stressed that the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Henderson*, 431 U.S. at 154); see also *Durr*, 487 F.3d at 446-447; *Poindexter*, 454 F.3d at 586-587.  The inquiry goes beyond whether the instruction is merely "undesirable, erroneous, or even 'universally condemned.' "  *Henderson*, 431 U.S. at 154 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).  The category of alleged due process violations that violate fundamental fairness has been very narrowly defined.  *Estelle v. McGuire*, 502 U.S. 62, 73, 112 S.Ct. 475 (1991).

The trial court instructed the jury as follows:

Consciousness of guilt. Flight of the defendant. Testimony is being admitted indicating that the defendant fled the State. You are instructed that the fact of the defendant fled the State does not raise the presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt.

If you find the facts so not support that the defendant fled the State, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose.

However, if you find that the facts support that the defendant engaged in such conduct and if you decide the defendant was motivated by a consciousness of guilt,

-19-

you may, but are [sic] required to consider that evidence in deciding whether the defendant is guilty of the crimes charged.

You alone will determine what weight if any, to give this evidence.

ECF Dkt. #6-9 at 246.

The Eighth District Court of Appeals provided the following analysis of Petitioner's challenge to the flight instruction:

{¶ 51} Appellant's fifth assigned error asserts that the trial court erred when it gave a flight instruction over his objection. Appellant argues that due to his inability to fully cross-examine the United States marshall [sic], the flight instruction should not have been given, and further, that the mere presence of appellant in Florida does not give rise to a presumption of flight.

{¶ 52} Flight from justice "means some escape or affirmative attempt to avoid apprehension." *State v. Wesley*, Cuyahoga App. No. 80684, 2002-Ohio-4429, citing *United States v. Felix-Gutierrez* (C.A.9, 1991), 940 F.2d 1200, 1207. Flight from justice may be indicative of a consciousness of guilt. *State v. Taylor*, 78 Ohio St.3d 15, 27, 676 N.E.2d 82, 1997-Ohio-243; *State v. Eaton* (1969), 19 Ohio St.2d 145,160, vacated on other grounds (1972), 408 U.S. 935.  The decision whether to issue an instruction on "flight" rests within the sound discretion of the trial court.  Absent an abuse of discretion, the trial court's decision will not be reversed on appeal. *State v. Benjamin*, Cuyahoga App. No. 80654, 2003-Ohio-281.  A trial court does not abuse its discretion by issuing an instruction on flight if sufficient evidence exists in the record to support the charge. *Id.*

{¶ 53} In this case, there was evidence that appellant made several calls to Florida immediately following the murder. Marshall [sic] Place testified that it became apparent early in his investigation that appellant had fled to Florida. Appellant was apprehended in Florida. On this record, sufficient evidence exists to support an instruction on flight. In the first assignment of error we addressed appellant's arguments concerning the trial court's limiting his cross-examination of the marshall [sic] and found no error.

*Hudson*, *supra*, at *7-8.

The undersigned has recommended that the Court reject Petitioner's argument challenging the application of *Marino, supra,* by the trial court in Ground One.  Because the admission of USM Place's testimony was not constitutionally infirm, there was sufficient evidence in the record to warrant a flight instruction.  Consequently, Petitioner cannot demonstrate that the flight instruction deprived him of due process.  Accordingly, the undersigned recommends that the Court find that Ground Two has no merit.

**C.  Ground Three**

-20-

TONIO HUDSON'S RIGHT TO A FAIR TRIAL WAS VIOLATED WHEN US MARSHALL [SIC] JASON PLACE INFORMED THE JURY THAT HUDSON HAD A PRIOR CRIMINAL RECORD.

In Ground Three, Petitioner contends that he was denied his Sixth Amendment right to a fair trial based upon the trial court's failure to declare a mistrial when USM Place testified that Petitioner "had a previous residence in Florida and attended school there, [and] had a criminal history there." ECF Dkt. #6-8 at 202.  The Eighth District provided the following analysis of Petitioner's argument that a mistrial should have been granted based upon USM Place's statement at trial:

{¶ 35} In his second assignment of error, appellant asserts that the trial court erred in failing to declare a mistrial after the government witness stated that appellant had a criminal record.

{¶ 36} The record reflects that in the exchange between the state of Ohio and United States Marshall [sic] Place, relative to how he discovered appellant was in Florida, Place testified that he knew appellant "had a previous residence in Florida and attended school there, had a criminal history there."  Defense counsel immediately objected. The trial court sustained the defense objection and expressly instructed the jury to disregard the officer's statement.  Appellant later moved for a mistrial that was denied by the trial court.

{¶ 37} We review the trial court's decision on a motion for a mistrial under an abuse of discretion standard. *State v. Barnes*, Cuyahoga App. No. 90690, 2008-Ohio-5602; State v. Garner, 74 Ohio St.3d 49, 656 N.E.2d 623, 1995-Ohio-168.  A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened, unless the substantial rights of the accused or the prosecution are adversely affected; this determination is made at the discretion of the trial court. *State v. Goerndt*, Cuyahoga App. No. 88892, 2007-Ohio-4067, citing State v. Reynolds (1988), 49 Ohio App.3d 27, 33, 550 N.E.2d 490.  A mistrial need be declared only "when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, 580 N.E.2d 1.

{¶ 38} Appellant argues that the officer's statement gave the jury prejudicial information about appellant that would be impossible for the jury to ignore. Appellant relies upon *State v. Allen* (1987), 20 Ohio St.3d 53. In the *Allen* case, the trial court, over defense objection, revealed to the jury the defendant's two prior DUI convictions under the mistaken belief that the prior convictions were an essential element of the DUI offense for which defendant was being tried.  The Ohio Supreme Court noted that "the existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule." *Id.* at 55.  The court further stated that it was not persuaded that the defendant would have been convicted without the disclosure to the jury of the two prior convictions.

{¶ 39} We find the *Allen* case readily distinguishable on the facts. In this case, there was a single, fleeting reference to appellant's criminal history. It was followed immediately by a curative instruction to the jury to disregard the answer given.  A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge. *State v. Henderson* (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237. Given the curative instruction given by the trial court and the substantial evidence presented by the state concerning appellant's guilt, appellant has failed to show how

-21-

he suffered any material prejudice. Accordingly, appellant's second assignment of error is overruled.

*Hudson*, *supra*, at *5.

Federal courts may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). Trial-court errors in evidence law only warrant federal habeas review if "the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), cert. denied, 543 U.S. 892, 125 S.Ct. 168, 160 L.Ed.2d 156 (2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69–70, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

Here, the Eighth District soundly reasoned that Petitioner's criminal history was only mentioned one time, and was immediately followed by a curative instruction. Consequently, there was no fundamental unfairness nor deprivation of due process, and the undersigned recommends that the Court find that no due process violation occurred and that Ground Three has no merit.

### D. <u>Ground Four</u>

WHETHER THE TRIAL JUDGE SHOULD HAVE SUPPRESSED THE PRETRIAL IDENTIFICATIONS OF PETITIONER MADE BY WITNESSES.

In his final ground for relief, Petitioner contends that the trial court should have suppressed the pretrial identifications of Powers, Andrews, Thompson, and Oliver. The Eighth District provided the following analysis of Petitioner's challenge to the identification process:

{¶ 55} In the sixth assignment of error, appellant argues that the trial court should have suppressed some or all of the witnesses' identifications. He reasserts his credibility argument based upon the witnesses' alcohol consumption that night and additionally agues [sic] that the lighting in the parking lot was poor. He challenges Andrews's identification because it was initially based upon a single photograph and challenges Powers's identification because he viewed appellant's photograph in a newspaper prior to picking him out of a photo array. He argues that Thompson's and Oliver's identifications were tainted due to the passage of time. We disagree.

{¶ 56} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the

-22-

applicable legal standard." *State v. Burnside*, 100 Ohio St.3d 152, 797 N.E.2d 71, 2003-Ohio-5372, at ¶ 8 (internal citations omitted).

{¶ 57} Courts apply a two-prong test in determining the admissibility of challenged identification testimony. First, appellant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive. If this burden is met, the court must then consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. *State v. Page*, Cuyahoga App. No. 84341, 2005-Ohio-1493, citing *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140. Therefore, even if the identification procedure is suggestive, as long as the challenged identification is reliable, it is admissible.

{¶ 58} Reliability is the linchpin in determining the admissibility of identification testimony, with factors affecting reliability including the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *State v. Merrill* (1984), 22 Ohio App.3d 119, 121, 489 N.E.2d 1057, citing *Neil v. Biggers* (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401.

{¶ 59} The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup or a photographic array, has been widely condemned as unnecessarily suggestive. *State v. Barnett* (1990), 67 Ohio App.3d 760, 768, 588 N.E.2d 887, citing *Stovall v. Denno* (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. However, as noted previously, this does not per se render the identification unreliable. The key issue is whether the identification was reliable. Courts have been reluctant to hold that a presentation of a single photograph of the defendant to a witness violates due process when external factors "prove" the accuracy of the identification. One of the strongest of these external factors that may be used to prove the accuracy of the identification is the situation where the witness already knew the perpetrator before the crime was committed. *Barnett* at 768, 588 N.E.2d 887.

{¶ 60} This is not a case where witnesses are asked to identify a criminal they had never seen before and saw only briefly at the time of the crime. This case involves witnesses who were familiar with the appellant but knew him only through a street name. Andrews testified that he knew appellant from years ago and had met him months before the shooting. Although he knew appellant's face, he knew him only by the name "Montana." In the days immediately after the shooting, police tried to put a name and face to "Montana" by showing Andrews photographs of individuals who might possibly be "Montana." Andrews viewed and rejected photographs of eight different people before identifying appellant as "Montana" from a single photograph. Andrews later picked appellant out of a six-picture photo array.

{¶ 61} Thompson and Oliver testified to meeting appellant months before the crime and to seeing him around the apartment complex on a regular basis. Powers testified to meeting appellant earlier the day of the shooting through his brother. Thompson and Oliver testified to seeing appellant in the parking lot just minutes before the shooting. Powers testified that he was in the car when appellant shot Bell. All three separately identified appellant from a photograph array of six pictures, the make-up of which appellant has not challenged. All three were certain of their identification.

{¶ 62} Nothing in the record indicates that identification methods used by the police were so suggestive that they created a risk of misidentification. Furthermore, there

-23-

is nothing in the record that indicates that the witnesses' identification was not reliable. Accordingly, appellant's sixth assignment of error is overruled.

The state court of appeals explicitly applied the analysis set forth in the U.S. Supreme Court's decision in *Manson* and *Biggers*, *supra*, and, therefore, the question before this court is whether the state court's decision involved an unreasonable application of clearly established federal law. The state court's decision can not be found unreasonable simply because this court would consider the state decision to be erroneous or incorrect. Rather, the court must determine that the decision is an objectively unreasonable application of federal law. *Williams v. Taylor*, 529 U.S. 362, 410-12, 120 S.Ct. 1495. (2000); *Lorraine v. Coyle*, 291 F.3d 416, 422 (6th Cir.2002).

The court does not undertake a *de novo* review, in a case where the state court addressed the merits of the constitutional claim. See, e.g., *Price v. Vincent*, 538 U.S.634, 638-639, 123 S.Ct. 1848 (2003). Rather, Petitioner must show that the state court decision was either contrary to, or an unreasonable application of, clearly established federal law, or was based upon an unreasonable determination of the facts. *Id.* at 639.

An identification will violate a defendant's right to due process if the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir.2005), cert. denied, 546 U.S. 1100, 126 S.Ct. 1032, 163 L.Ed.2d 871 (2006). "It is the likelihood of misidentification which violates a defendant's right to due process." *Howard*, 405 F.3d at 469 (quoting *Biggers*, 409 U.S. at 198). It is the petitioner's burden of proof to show that the procedure was unduly suggestive. *Tipton v. Carlton*, No. 06–5496, 2008 WL 5397785, at *4 (6th Cir. Dec.29, 2008), cert. denied, __U.S. __, 130 S.Ct. 279, 175 L.Ed.2d 187 (2009) (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1071 ( 6th Cir.1994 )).

An improper photo array "steer[s] the witness to one suspect or another, independent of the witness's honest recollection," and is thus unduly suggestive. *Williams v. Lavigne*, No. 05–1398, 2006 WL 3780364, at *3 (6th Cir. Dec.22, 2006), cert. denied, 552 U.S. 910, 128 S.Ct. 254, 169 L.Ed.2d 187 (2007) (Clay, J., concurring in part) (quoting *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th

-24-

Cir.2001)).  In other words, suggestiveness generally depends "upon whether the witness's attention was directed to a suspect because of police conduct." *Howard*, 405 F.3d at 469-470.  The state court's factual findings regarding the physical characteristics of the array are entitled to a presumption of correctness. *Wilkins v. Timmerman–Cooper*, 512 F.3d 768, 773 (6th Cir.2008)).

Where the petitioner meets the burden of showing impermissible suggestiveness, the Court will evaluate the reliability of the identification under the totality of the circumstances. *Halyim v. Mitchell*, 492 F.3d 680, 704 (6th Cir.2007); *United States v. Sullivan*, 431 F.3d 976, 985 (2005) . If there is no showing of an impermissibly suggestive process, the court need not assess the reliability of the identification. *Williams v. Lavigne*, 2006 WL 3780364, at *3 (Clay, J., concurring) (citing *Neil v. Biggers*, 409 U.S. at 199).

Even where the identification procedure is shown to be impermissibly suggestive, if the identifications are reliable, they will be admissible. *Grayer v. McKee*, No. 04–1335, 2005 WL 2186115, at *7 (6th Cir. Sept.9, 2005), cert. denied, 547 U.S. 1059, 126 S.Ct. 1661, 164 L.Ed.2d 403 (2006) (citing *Manson v. Brathwaite*, *supra*, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). "Reliability is the linchpin in determining the admissibility of identification testimony." *Howard*, 405 F.3d at 469 (quoting *Manson*, 432 U.S. at 114 (1977)). In assessing reliability, the court considers:

> ... the totality of the circumstances, including the factors described in Manson and Biggers: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification.

*Howard*, 405 F.3d at 472 (citing *Manson*, 432 U.S. at 114, *Neil v. Biggers*, 409 U.S. at 199-200); see also *Haliym*, 492 F.3d at 704; *Graye*r, 2005 WL 2186115, at *7.

Although the Eighth District criticized the state's decision to employ a single photograph for the purpose of identifying Petitioner, the appellate court concluded that the identification process was not "so suggestive that [it] created a risk of misidentification." The problem faced by law enforcement in this case was that the witnesses only knew Petitioner by his nickname and, as a consequence, had difficulty specifically identifying him for the purposes of this case.  Because Powers, Andrews, Thompson and Oliver knew Petitioner prior to the identification procedure, the

Eighth District concluded that the use of individual photographs was not "unnecessarily suggestive." Moreover, the Eighth District underscored the fact that Andrews, for instance, saw a series of individual photographs before choosing the photograph of Petitioner. Based upon the familiarity of the witnesses with Petitioner, the Court concluded that their identifications of Petitioner were reliable. Based upon the foregoing analysis, the undersigned recommends that the Court find that the determination of the Eighth District Court of Appeals was not objectively unreasonable, and that the Ground Four has no merit.

**VII.**  **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.

DATE: June 27, 2012                                  */s/ George J. Limbert*
                                                 GEORGE J. LIMBERT
                                                 UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).